IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BLUESTAR MANAGEMENT LLC d/b/a WRIGLEY DONE RIGHT, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 C 4540 |
| v. | ) ) | Judge Robert W. Gettleman |
| THE ANNEX CLUB, LLC d/b/a THE IVY LEAGUE BASEBALL CLUB, WRIGLEY ROOFTOPS IV, LLC d/b/a SHEFFIELD BASEBALL CLUB, WRIGLEY ROOFTOPS III, LLC d/b/a WRIGLEY FIELD ROOFTOP CLUB and THOMAS GRAMATIS, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, BlueStar Management LLC ("BlueStar") d/b/a Wrigley Done Right ("Wrigley Done Right"), has brought a seven-count complaint against defendants, The Annex Club d/b/a The Ivy League Baseball Club (the "Ivy League Club"), Wrigley Rooftops IV, LLC d/b/a Sheffield Baseball Club (the "Sheffield Club"), Wrigley Rooftops III, LLC d/b/a Wrigley Field Rooftop Club (the "Wrigley Rooftop Club"), and Thomas Gramatis ("Gramatis"), alleging: false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (Count I); false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count II); anticompetitive conspiracy in violation of Section I of the Sherman Act, 15 U.S.C. § 1 (Count III); tortious interference with a prospective business relationship (Count IV); violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (Count V); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count VI); and common law unfair competition (Count VII). Defendants have moved to dismiss the

complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). For the reasons discussed below, defendants' motion is granted as to Counts III, IV, and VII, and denied as to Counts I, II, V, and VI.

## BACKGROUND

BlueStar is the proprietor of a rooftop club – Wrigley Done Right – licensed by the City of Chicago (the "City") to charge admission to view Chicago Cubs baseball games and other events at Wrigley Field. There are fifteen such clubs with current Special Club Licenses issued by the City. BlueStar promotes its club through a variety of marketing initiatives and maintains a website at <wrigleydoneright.com>.

In 2008, BlueStar alleges that Gramatis began to spread false rumors and statements about BlueStar's consultant, Dean Bravos, and manager, Lee Gramatis, to City inspectors with the intent of interfering with the process of inspection and permit issuance for Wrigley Done Right. In addition, Gramatis allegedly told prospective customers of Wrigley Done Right that the club "would never get a license or occupancy card to open." Gramatis made these statements even though he was aware that the Wrigley Done Right facility had previously complied with City ordinances when Gramatis leased the same building during the 2004 and 2005 baseball seasons. The City subsequently issued BlueStar all the permits required for operation.

The complaint further alleges that the Wrigley Rooftop Club is currently paying for a "sponsored result" advertisement on the website <www.purelocal.com> that features a photograph of the Wrigley Done Right roof top building adjacent to a link to the website for the Wrigley Rooftop Club. Aside from being a direct competitor of the Wrigley Rooftop Club,

2

Wrigley Done Right is situated in a well-known building that is twice as wide and better located than the Wrigley Rooftop Club.

The complaint further alleges that the Ivy League Club and Gramatis have misrepresented that the Ivy League Club, located at 3637 Sheffield, is open for business, when it has in fact been closed for construction since prior to the 2008 season. From January 2008 until sometime in 2009, the Ivy League Club was being promoted and advertised on <ivyleaguebaseballclub.com> without any disclosure to consumers that the rooftop was closed. Sometime in June 2009, a small disclaimer was added to the Ivy League Club's website stating:

> Please Note: Ivy League Baseball Club is currently undergoing a complete renovation and we anticipate the grand reopening on July 24, 2009. In the event that Ivy League Baseball Club is not available for your event, customers will be accommodated at one of our new facilities at Sheffield Baseball Club located at 3619 N. Sheffield or Wrigley Field Rooftop Club located at 3617 N. Sheffield.

Despite being under construction and lacking the necessary permits, the Ivy League Club took a significant number of reservations in 2009. Only after guests arrive for a game were they notified that the Ivy League Club was closed, and redirected to the Sheffield Baseball Club and the Wrigley Rooftop Club. These other clubs are located approximately 200 feet away from the Ivy League Club's mid-center field location. Only after receiving a cease and desist letter from BlueStar did the Ivy League Club change its reopening date on its website to September 2009.

Notwithstanding its closure, a link to the Ivy League Club website remained listed on <ballparkrooftops.com>, an internet directory authorized by and listed on the Chicago Cub's official website under "Rooftop Partners." This website allegedly generates significant business among Cubs fans. In addition, Gramatis allegedly has falsely represented on the Wrigley

Rooftop Club's Facebook page that consumers can "[e]njoy a fantastic unobstructed view of Wrigley Field and the Chicago Cubs from any one of our three new state of the art facilities."

Additionally, the complaint alleges that defendants have intentionally used their collective power and influence to preclude Wrigley Done Right from joining the Wrigley Rooftop Association (the "Rooftop Association"), an association of most of the Special Club License holders and operators of Wrigley rooftop venues. Without membership in the Rooftop Association, Wrigley Done Right is prevented from participating in organized meetings with the local community and alderman to discuss issues related to operation of the rooftops, including new ordinances and license requirements, and to advocate on behalf of its business interests.

Defendants have also allegedly interfered with Wrigley Done Right's sales by interfering with its inclusion on the <ballparkrooftops.com> website. According to the WHOIS database, the <ballparksrooftops.com> domain name is owned by the Rooftop Association, and Gramatis is listed as the administrative contact. The Rooftop Association is not incorporated and is not listed with the Illinois Secretary of State Corporate records. A "Wrigley Rooftops Property Owners Association" is identified, but was dissolved in 2004. From approximately January 7, 2008, until May 5, 2008, Gramatis repeatedly refused to list Wrigley Done Right on the <ballparksrooftops.com> website and instead fraudulently linked it to his own rooftop's website <wrigleyfieldrooftopclub.com>. This allegedly resulted in lost sales for Wrigley Done Right.

**DISCUSSION**

When ruling on a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claims rest. The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-73, 167 L.Ed.2d 929 (2007).

As a preliminary matter, defendants argue that the complaint should be dismissed in its entirety because plaintiff's predicate allegations fail to comply with Fed. R. Civ. P. 9(b). The court will consider this argument in its analysis of the individual counts.

**Counts I & II - Lanham Act**

Count I of the complaint alleges that the Wrigley Rooftop Club and Gramatis deliberately and willfully displayed photographic images of BlueStar's rooftop facility in an internet advertisement in an attempt to pass off Wrigley Done Right's facility as the Wrigley Rooftop Club and to confuse consumers into believing that they could purchase tickets to Wrigley Done Right's facility by contracting with the Wrigley Rooftop Club. Count II alleges that defendants deliberately and willfully misrepresented to consumers that the Ivy League Club was open for business through advertisements posted on <ivyleaguebaseballclub.com>, <ballparkrooftops.com>, and Gramatis' Facebook page.

*Rule 9(b)*

Defendants argue that claims alleging false representation under the Lanham Act are subject to Rule 9(b). MPC Containment Sys., Ltd. v. Moreland, 2006 WL 2331148, at *2-3 (N.D. Ill. Aug. 10, 2006) (applying Rule 9(b) to unfair competition claim brought under § 1125(a)(1)(A)) (collecting cases). Regardless of whether a Lanham Act false representation claim must be plead with particularity, in the instant case BlueStar has pled allegations of the "who, what, where, when, and how" of Count I with respect to the Wrigley Rooftop Club and Gramatis. Although it appears that BlueStar intended to bring Count I against all defendants, the complaint does not sufficiently plead how the other defendants were involved in placing the purportedly misleading advertisement. The court will therefore consider Count I only as against the Wrigley Rooftop Club and Gramatis. The other defendants, the Ivy League Club and the Sheffield Club, are therefore dismissed from Count I.

Similarly, BlueStar is apparently seeking to hold all defendants liable for Count II, but it has not pled any facts describing the Sheffield Club's role in placing or promoting the offending web advertisement. Absent such allegations, the court will consider Count II only as against the Wrigley Rooftop Club, Gramatis, and the Ivy League Club. The Sheffield Club is therefore dismissed from Count II.

*Lanham Act*

Defendants argue that Count I fails to state a claim under § 1125(a)(1)(A) and is more properly analyzed as a claim under § 1125(a)(1)(B) using the standard set forth in Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 819 (7th Cir. 1999). BlueStar maintains that Count I properly

6

states a claim for false designation under § 1125(a)(1)(A) and, without offering an alternative standard, argues that the Hot Wax standard is inapplicable to Count I.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides, in relevant part that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*Count I*

False designation claims are generally either "passing-off" claims or "reverse passing-off" claims that involve misuse of a name or trademark. Web Printing Controls Co., Inc. v. Oxy-Dry Corp., 906 F.2d 1202, 1203 n.1 (7th Cir. 1990). The court notes that both Subsections A or B could apply to the instant case because Gramatis and the Wrigley Rooftop Club were allegedly attempting to pass-off the Wrigley Done Right facility as their own in an advertisement.

To state a claim under § 1125(a)(1)(B) for false designation, a plaintiff must allege: "'(1) that the defendant used a false designation of origin or false description or representation in connection with goods or services; (2) that such goods or services entered interstate commerce; and (3) that the plaintiff is a person who believes he is likely to be damaged as a result of the misrepresentation.'" Gaffrig Performance Indus., Inc. v. Livorsi Marine, Inc., 2003 WL 23144859, *15 (N.D. Ill. Dec. 19, 2003) (quoting Kennedy v. Nat'l Juvenile Detention Ass'n, 187 F.3d 690, 695-96 (7th Cir. 1999)).

Taking all reasonable inferences in favor of plaintiff, the allegations of Count I satisfy the elements of a false designation claim under the Lanham Act. BlueStar has alleged that: (1) Gramatis and the Wrigley Rooftop Club sponsored an advertisement featuring a photo of Wrigley Done Right's building next to a link to the Wrigley Rooftop Club's website; (2) Gramatis and the Wrigley Rooftop Club caused the advertisement to enter instate commerce when they sponsored the advertisement on the internet on the <ballparkrooftops.com> website; and (3) BlueStar has been injured as a result of the misrepresentation because sales have been diverted from Wrigley Done Right to the Wrigley Rooftop Club.

Defendants urge the court to consider the fact that the source code for the advertisement reveals that the picture was posted on the internet by a company with the email address <worthathousandwords.com>, not defendants, and that BlueStar has not alleged a relationship between these separate entities. Nonsense. Even if the court were to consider the source code of the advertisement, which was supplied by defendants and not mentioned in the complaint,[1] it does not take a great inferential leap to conclude that BlueStar has alleged that defendants supplied the content of the advertisement to <worthathousandwords.com>, whom they hired to

---

[1] Defendants have attached a copy of the source code of the advertisement to their motion and argue that the court can consider it without converting their motion to a motion for summary judgment. The Seventh Circuit recognizes a narrow exception to Fed. R. Civ. P. 12(b) that arises most frequently where a complaint references but does not attach a document central to a claim and necessary for disposition of a motion to dismiss. Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002). However, "documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss." Albany Bank & Trust Co. v. Exxon Mobil Corp., 310 F.3d 969, 971 (7th Cir. 2002) (quoting Berthold Types Ltd. v. Adobe Sys. Inc., 242 F.3d 772, 775 (7th Cir. 2001)). Here, the source code is outside the four corners of the complaint, does not fall within the exception to the rule because the advertisement cannot be characterized as a portion of the relevant document, and the source code is not necessary for disposition of the instant motion.

post the advertisement.  Defendants' remaining arguments – that the advertisement was a mistake or the photograph was too small to influence purchasing decisions – are fact-based and not appropriate for consideration at this stage in the proceedings.  Because Count I adequately states a claim for false designation under the Lanham Act, § 1125(a)(1)(A), against Gramatis and the Wrigley Rooftop Club, defendants' motion to dismiss Count I is denied.

*Count II*

Count II sufficiently states a claim for false advertising under § 1125(a)(1)(B).  To state a claim under the false or deceptive advertising prong of § 43(a) of the Lanham Act, a plaintiff must plead: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products."  Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 819 (7th Cir. 1999).

The complaint alleges that from January 2008 until some time in 2009, Gramatis and the Ivy League Club promoted and advertised the availability of services at the Ivy League Club on the <ivyleaguebaseballclub.com> website and Gramatis' Facebook page despite the fact that the facility was closed for renovation through the 2009 baseball season and lacked the Special Club License required for hosting patrons.  BlueStar alleges that Gramatis and the Ivy League Club

9

accepted reservations for the closed facility and later fulfilled purchasers' tickets at one of Gramatis' other facilities – either the Sheffield Club or the Wrigley Rooftop Club. These alternative facilities allegedly have less favorable viewing locations than the Ivy League Club's, and the web advertisements for the Ivy League Club were used to deceive consumers into booking reservations for inferior services. Finally, BlueStar alleges that the Ivy League Club has booked a significant number of reservations as a result of these misleading advertisements and that the diversion of sales has injured BlueStar's business.

Defendants argue that the construction delays that the Ivy League Club experienced did not amount to fraud and that disclaimers were posted on both Gramatis' Facebook page and <ivyleaguebaseballclub.com> informing consumers of the on-going construction and alternative seating arrangements in the event that construction was not complete. BlueStar concedes that a disclaimer was placed on the Ivy League Club's website, but argues that the disclaimer was inconspicuous and ineffective. Without considering the size or efficacy of the disclaimer, the crucial fact is that it did not appear on the Ivy League Club's website until June 2009. For more than a year and a half, defendants were advertising and selling seats for a venue that was not operational. This goes beyond conduct consistent with a mere construction delay. Consequently, plaintiff has successfully stated a claim for false advertising under the Lanham Act, and defendants' motion to dismiss Count II is denied.

**Count III - Sherman Act**

15 U.S.C. § 1 of the Sherman Act provides in relevant part that:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . .

10

To state a claim under § 1, a plaintiff must plead "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market; and (3) an accompanying injury." MCM Partners v. Andrews-Bartlett & Assocs., 161 F.3d 443, 448 (7th Cir. 1998) (internal citations omitted). The two standards for determining whether an alleged restraint of trade is unreasonable are the rule of reason and the per se rule. Denny's Marina v. Renfro Prods., Inc., 8 F.3d 1217, 1220 (7th Cir. 1993). The rule of reason, the standard traditionally applied to most § 1 actions, requires a sufficient allegation of anticompetitive effects to state a claim, whereas a per se offense is "so destructive of free competition that deleterious effects will be conclusively presumed." Havoco of America, Ltd. v. Shell Oil Co., 626 F.2d 549, 555 (7th Cir. 1980). Examples of per se offenses include price fixing agreements, group boycotts, and market allocation.[2] Id.

Count III alleges that defendants conspired to keep BlueStar out of the Rooftop Association and prevented Wrigley Done Right from being listed on the <ballparkrooftops.com> website. Although the complaint does not specify the nature of the § 1 claim, BlueStar clarifies in its papers in opposition to the instant motion that it considers the alleged conduct to be a type of group boycott. Therefore, the court first considers whether defendants' denial of plaintiff's membership to the Rooftop Association constitutes a per se, group boycott violation of the Sherman Act.

---

[2] "Only after courts have considerable experience with a particular type of conduct, and application of the rule of reason has inevitably resulted in a finding of anticompetitive effect, will the practice in question generally be deemed a per se violation." Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advertising Ass'n. Inc., 672 F.2d 1280, 1284 (7th Cir. 1982).

11

A group boycott is a "concerted attempt by a group of competitors at one level to protect themselves from competition from non-group members who seek to compete at that level." Tolkan, 672 F.2d at 1284 (quoting Smith v. Pro Football, Inc., 593 F.2d 1173 (D.C. Cir. 1978)). In Tolkan the Seventh Circuit recognized that where a group boycott does not involve "a direct effort to influence the supply of, or demand for, a competitor's product, per se treatment may not be appropriate." Id. at 1286. The Supreme Court similarly held in Northwest Wholesale Stationers, Inc. v. Pacific Stationary & Printing Co., that unless a wholesale cooperative "possess[es] market power or exclusive access to an element essential to effective competition, the conclusion that exclusion [from the group] is virtually always likely to have anticompetitive effect is not warranted." 472 U.S. 284, 296 (1985).

There are no allegations in the complaint that plausibly suggest that the Rooftop Association has the market power whereby BlueStar's exclusion from the group would result in serious anticompetitive effects. All that is alleged is that: (1) the Rooftop Association is an unincoporated organization composed of most, but not all, of the Special Club License holders and Wrigley rooftop operators other than Wrigley Done Right; (2) the Rooftop Association members participate in organized meetings with the local community and the alderman to discuss important issues related to operation of Wrigley rooftops; and that (3) BlueStar's exclusion from the Rooftop Association has prevented Wrigley Done Right's ability to monitor discussions with its competitors. In conjunction with the allegations specific to Count III, BlueStar urges the court to consider that defendants allegedly interfered with the inclusion of Wrigley Done Right on the <ballparkrooftops.com> website one month after BlueStar entered into a licensing agreement with the Chicago Cubs.

Far from establishing a viable per se claim, these allegations do nothing to plausibly suggest that the Rooftop Association had "exclusive access to an essential element of effective competition," or the market power to influence the supply or demand for BlueStar's products or services. To the contrary, the complaint merely suggests that the Rooftop Association is an informal group of rooftop vendors who have built relationships and lines of communication with the local community and the alderman. There is nothing to suggest that these relationships are exclusive, or that BlueStar was prevented from building its own relationships and establishing lines of communication with local residents or the alderman's office. Indeed, the complaint acknowledges that BlueStar was listed on <ballparkrooftops.com> within a month of entering into a licensing agreement with the Cubs. There is nothing in the complaint to plausibly suggest that Wrigley Done Right has lost customers or revenue from its lack of membership in the Rooftop Association. Because defendants' alleged actions do not amount to a per se violation of the Sherman Act, the next question is whether BlueStar's allegations state a claim under the rule of reason.

To state a claim under the rule of reason, a plaintiff must allege anticompetitive market effects, that plaintiff's injury is of the type the Sherman Act was designed to prevent, and that the antitrust violation was the direct cause of plaintiff's injury. Havoco, 626 F.2d at 556. At issue here is the first of these three elements. The parties agree that to allege an injury to the market, plaintiff must allege that prices are no longer competitively determined, or that the quality or quantity of the services or products has deteriorated. Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1109-1110 (7th Cir. 1984).

BlueStar's allegations that its exclusion from the Rooftop Association, the one month delay in Wrigley Done Right being listed on the <ballparksrooftops.com> website, and defendants' false advertising for the Ivy League Club somehow resulted in "unreasonably restrained trade in the Wrigleyville rooftop market" are not only implausible under Rule 12(b)(6), but are nonsensical. BlueStar concedes that the complaint does not correlate the first two of these allegations to the diminished quality of the rooftop facilities. In addition, the alleged false advertising is not an antitrust violation, and therefore cannot be the premise of an antitrust claim. Nelson v. Monroe Regional Medical Center, 925 F.2d 1555, 1564 (7th Cir. 1991). Because BlueStar has failed to state a § 1 violation under either the per se rule or the rule of reason, Count III is dismissed with prejudice.

**Count IV - Tortious Interference with a Prospective Contract**

To state a claim for tortious interference with a prospective business relationship under Illinois law, a plaintiff must allege: (1) "[her] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." International Mktg., Ltd. v. Archer-Daniels-Midland Co., Inc., 192 F.3d 724, 731 (7th Cir. 1999) (quoting Dowd & Dowd, Ltd. v. Gleason, 181 Ill. 2d 460, 693 N.E.2d 358, 370, 230 Ill. Dec. 229 (Ill. 1998)). Competition is one of the numerous privileges that serve as a complete defense to a claim for tortious interference. Speakers of Sport, Inc. v. ProServ, Inc., 178 F.3d 862, 865 (7th Cir. 1999). In Illinois, the competition defense is recognized so long as

competitive conduct is not motivated solely by spite or ill will. International Mktg., 192 F.3d at 731; see also, Speakers of Sport, 178 F.3d at 867 ("[T]he tort of interference with business relationship should be confined to cases in which the defendant employed unlawful means to stiff a competitor.").

Defendants argue that even if BlueStar has sufficiently alleged each of the required elements, Count IV should be dismissed because BlueStar's complaint admits all of the facts necessary for defendants to establish a competition defense. Although competition would normally be regarded as an affirmative defense, the Seventh Circuit has recognized that "in some cases a complaint so clearly reveals the existence of the defense that judgment on the pleadings is possible." International Mktg., 192 F.3d at 731. This is such a case.

Although the complaint sets forth the necessary elements of a tortious interference claim, the complaint also establishes that the parties are competitors. BlueStar argues that because it has pled allegations of defendants' predatory and anti-competitive conduct, if proven true these facts overcome a competition defense. The problem with this argument is threefold: (1) the court has found that BlueStar's allegations of anti-competitive conduct is implausible; (2) the complaint is bereft of allegations of predatory conduct; and (3) BlueStar has not alleged that defendants' conduct was motivated solely by spite or ill will. Consequently, defendants' motion to dismiss Count IV is granted.

**Counts V and VI - Illinois Deceptive Trade Practices Act and Illinois Consumer Fraud Act**

The parties agree that Count V, based on the Illinois Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq.*, and Count VI, based on the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS § 505/1 *et seq.*, must rise or fall based on the outcome of the Lanham

Act claim. "This is because the legal inquiry is the same under the Lanham Act as under the Consumer Fraud Act and the Deceptive Trade Practices Act." MJ & Partners Restaurant Ltd. Pshp. v. Zadikoff, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998). Because BlueStar has successfully stated claims under the Lanham Act, defendants motion to dismiss Counts V and VI are denied.

**Count VII** - **Unfair Competition**

Defendants argue that Count VII should be dismissed because BlueStar has failed to alleged sufficient facts to support a common law claim for unfair competition as set forth in Wilson v. Electro Marine Systems, Inc., 915 F.2d 1110 (7th Cir. 1990) (holding that common law unfair competition is reserved for the "most egregious of cases"). BlueStar argues that the pleading requirements articulated in Wilson are inapplicable here because the Seventh Circuit applied New York law, not Illinois law. Nevertheless, BlueStar has not offered an alternative standard by which to analyze the sufficiency of Count VII.

Stating a claim for unfair competition under Illinois common law is not a simple task because the Illinois courts have not specifically enumerated the requisite elements. Custom Bus. Sys., Inc. v. Boise Cascade Corp., 68 Ill. App. 3d 50, 52, 385 N.E.2d 942, 944, 24 Ill. Dec. 801 (Ill. App. 2 Dist.1979). As the Seventh Circuit has stated, "the law of unfair competition . . . is elusive; its elements escape definition." Wilson, 915 F.2d at 1118. The Illinois courts have, however, recognized that the Uniform Deceptive Trade Practices Act ("UDTPA") has codified most aspects of the common law tort of unfair competition. Custom Bus. Sys., 68 Ill. App. 3d at 52-53. The allegations underlying Count VII are identical to those of Count V, and BlueStar has not explained why its common law claim for unfair competition is still viable given the codification of UDTPA. Moreover, courts in this district have recognized that the allegations

underlying a claim of tortious interference with prospective economic advantage also suffice to state a claim for unfair competition. See <u>Zenith Elec. Corp. v. Exzec, Inc.</u>, 1997 WL 798907 (N.D. Ill. Dec. 24, 1997) (equating an unfair competition claim with a claim for tortious interference with prospective economic advantage). Because BlueStar has: (1) failed to state a claim for tortious interference with prospective economic advantage as discussed above; and (2) has already stated an identical claim under the UDTPA, defendants' motion to dismiss Count VII is granted.

## CONCLUSION

For the reasons stated herein, defendants' motion to dismiss Count I as against the Ivy League Club and the Sheffield Club, and the motion to dismiss Count II as against the Sheffield Club are granted. In addition, defendants' motion to dismiss Counts III, IV, and VII is granted, and their motion is denied as to Counts I, II, V, and VI. The defendants named in these counts are directed to answer them on or before August 9, 2010. The parties are directed to file with the court a joint status report using the court's form on or before August 9, 2010. This matter is set for a report on status August 17, 2010, at 9:00 a.m.

**ENTER:** **July 12, 2010**

_____
**Robert W. Gettleman**
**United States District Judge**